YANCY v. STATE.   (No. 4705.)

(Court of Criminal Appeals of Texas.   Nov. 21, 1917.)

1. WITNESSES ☞376—IMPEACHMENT—REBUTTAL OF IMPEACHING EVIDENCE.

In a prosecution for assault to murder, where the daughter of the assaulted party testified for defendant, and the state, to discredit her, showed that after the assault she got into defendant's buggy and drove off, it was improper to refuse to permit defendant to show that she drove off with him to secure medical assistance for her father.

2. CRIMINAL LAW ☞369(3)—OFFENSE—OTHER OFFENSES.

In prosecution for assault to murder committed with a pistol, it was improper on cross-examination to bring out that accused always carried his pistol and was armed when he passed the house of the assaulted man on previous occasions before they had had trouble.

3. CRIMINAL LAW ☞361(3)—TRIAL—REBUTTING TESTIMONY.

Where the state introduced evidence tending to show that accused and witness, who was with him shortly before the offense occurred, entered into a conspiracy by which they were to separate as they did and meet again after accused committed the assault on another, evidence tending to rebut that contention of the state by showing that they separated because accused desired to meet a young lady is improperly rejected.

Prendergast, J., dissenting.

Appeal·from District Court, Hill County; Horton B. Porter, Judge.

Archie Yancy was convicted of assault to murder, and he appeals. Reversed and remanded.

N. J. Smith and J. E. Clarke, both of Hillsboro, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of assault to murder, his punishment being assessed at two years' confinement in the penitentiary.

The evidence shows that the assaulted

party, Caruthers, owned a farm and lived upon it, and was the father of ten daughters. Appellant on Friday night preceding the trouble on Monday had attended an ice cream function in company with one of Caruthers' daughters. On Sunday evening, after this Friday night, appellant and another party drove through the premises of Caruthers and were accosted by Caruthers, and Caruthers talked to him in a rough and in an insulting manner. The purport of it was he was incensed at appellant for going with his daughter to the function and interdicted his going with his daughters. He made threats against appellant. The road appellant and his friend was traveling was used commonly by the neighborhood. On the ·following Monday appellant passed through the premises again in a buggy by himself. Caruthers was in the yard under the shade of a tree. After appellant passed about 300 or 400 yards, Caruthers followed him rapidly and called to him to stop. Appellant stopped. Caruthers approached, and the difficulty occurred in which appellant wounded Caruthers two or three times. The eyewitnesses to the transaction differ as to how the difficulty occurred. The state's theory was that when Caruthers approached, and before getting quite to appellant's buggy, the shooting occurred. Caruthers had said some very rough things to him as he approached indicative of carrying out the threat he had made on the previous Sunday. Appellant's theory of it, which is supported by himself and two of Caruthers' daughters, was that, when he (appellant) stopped his buggy, Caruthers approached, came in between the wheels on the left-hand side of the buggy, was pretty vigorous in his language, and made threats and reached as if to pull a pistol or knife, or something, and appellant fired. After firing a time or two, Caruthers ran behind the buggy and fell, got up, and ran off in a nearby field.

[1] Grace Caruthers testified in behalf of the defendant as to the condition of the parties, and in fact that her father was at the wheels of the buggy or between the wheels of the buggy at the time the firing began. She immediately after the shooting, as appellant drove down the road, holloed at him, got in the buggy, and rode away. This fact was proved by the state in criticism of her testimony and as impeachment. The defendant then offered to prove in explanation of her conduct that she got in the ·buggy for the purpose of going to the little village of Kimball close by for a doctor to come to the assistance of her father. This testimony was excluded on exception by the state. This was error. Her getting in the buggy and going with appellant under the circumstances was calculated to influence the jury adversely to her testimony. Her explanation, if believed by the jury might be satisfactory, that she was not in sympathy with appel-

lant, but was seeking assistance for her father. This testimony should have gone to the jury.

[2] Another bill of exceptions recites that on cross-examination the state asked appellant why he carried his pistol when passing through the farm and near the house and on the premises of Caruthers. Various objections were urged to all this, and he was permitted and required to answer: "I do not know that I ever went through there without it, hardly ever. I carried it all the time." This was error.

[3] Another bill recites that while Tom Ezell was testifying in behalf of defendant, and after it had been shown that on the morning preceding the difficulty between defendant and Caruthers, he and appellant, by an appointment previously made, met at Green Briar School House for the purpose of taking an empty beer keg to the town ·of Blum to ship to Ft. Worth, and, after they had carried this keg to Blum and were returning home, witness left defendant to go to his home about 1½ miles or 2 miles from where they separated, and that defendant started towards his (defendant's) home, and after it was shown that the defendant after leaving witness decided to. go to Kimball, after he had gotten about a half mile from Green Briar School House, and after it was further shown that he had started to Kimball and had traveled the·road leading by prosecuting witness' house and into and through the field which was a road used by the general public and after the facts and circumstances of the difficulty had been shown, and after it had been further shown that witness had met defendant and Miss Grace Caruthers in a buggy about a half mile from the scene of the difficulty and at a place in the road off of defendant's road to his home, the defendant offered to prove by the witness Tom Ezell, as a reason why he did not gò straight home and as a reason why he met the defendant and prosecuting witness, that he had an engagement with Miss Grace Caruthers to see her that evening at Mr. Parker's, which was a short distance off the main road, for the purpose of making an engagement to attend a moving picture show at Blum. Under the circumstances, this testimony ought to have gone to the jury. The theory of the state in introducing this testimony was that Ezell and appellant had a conspiracy that they were to separate as they did, and meet again after appellant engaged Caruthers in a difficulty. This would have been an explanation, if believed by the jury, as to why Ezell was going in the direction he was going at the time, and for the purpose for which it was offered. It is a universal rule, not only under the well-known principles of evidence, but by the statute, that where a damaging fact, or a fact thought to be damaging, is introduced, the opposing party may meet that by testimony which tends

to show that it was not intended as claimed by the party offering it. In other words, wherever a fact thought to be damaging is introduced against a party he may meet that by any available legitimate testimony to counteract or explain such fact.

For the reasons indicated, the judgment will be reversed, and the cause remanded.

PRENDERGAST, J., dissents.